| | | |
|---|---|---|
| JWJ HOTEL HOLDINGS, INC., | : | Case No. 1:18-cv-454 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| W&H REALTY, LLC, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING THE TRUST DEFENDANTS' MOTION
TO TRANSFER VENUE (Doc. 2); AND
DENYING WITHOUT PREJUDICE
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND APPOINTMENT OF A RECEIVER (Doc. 11); AND
TERMINATING THIS CASE IN THIS COURT**

This case is before the Court pursuant to the motion of Plaintiff JWJ Hotel

Holdings, Inc., f/k/a AJJ Hotel Holdings, Inc. ("JWJ") for preliminary injunction and

appointment of a receiver (Doc. 11), the motion of Defendants Jacqueline Dowdy and

Greggory Groves to transfer venue (Doc. 2), the parties' responsive memoranda

(Docs. 10, 14, 16, 17), and the oral argument of counsel on July 30, 2018.

## I.     INTRODUCTION

### A.     Parties.

Plaintiff JWJ is a duly organized Ohio corporation.  (Doc. 5 at ¶ 1).

Defendant W&H Realty LLC ("WHR") is an Ohio limited liability company.

(Doc. 5 at ¶ 2)

The John Q. Hammons Revocable Trust ("Trust") is a now irrevocable trust doing business in Springfield, Missouri. (Doc. 5 at ¶ 3).

Defendants Jacqueline O. Dowdy and Greggory Groves are the current successor co-trustees of the Trust. (Doc. 5 at ¶ 4). At all relevant times, Ms. Dowdy was a co-manager of WHR. (*Id.* at ¶ 5). Ms. Dowdy and Mr. Groves are collectively referred to as the "Trust Defendants."

JWJ and the Trust are equal co-owners of the membership interests in WHR. (Doc. 5 at ¶ 6). The Trust and JWJ, as co-owners of WHR, are parties to an Amended and Restated Operating Agreement dated effective as of May 18, 2017 ("Operating Agreement") that governs the operations and management of WHR and the relationship between its members. (Doc. 5 at ¶ 8). The Operating Agreement provides that WHR's business shall be managed by its two co-managers, <u>acting together</u>. (Doc. 5-1 at 22-23).

**B.    The Trust's Bankruptcy.**

On June 26, 2016, the Trust and seventy-five of its affiliates ("Debtors") filed voluntary petitions under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Kansas ("Bankruptcy Court"). (Doc. 14 at ¶ 3). The cases are jointly administered under Case No. 16-21142 (the "Bankruptcy Case") in the Bankruptcy Court. (*Id.*)

On February 13, 2018, the Debtors in the Bankruptcy Case filed a Motion for Authority to Enter Into Plan Support Agreement with JD Holdings, LLC and Compromise of Claims ("Settlement Motion"). (Doc. 14-4). The Settlement Motion sought to settle numerous, multi-year disputes between the Debtors and JD Holdings,

L.L.C. ("JD Holdings") to clear the way for JD Holdings to acquire substantially all of the Debtors' assets, pay in full all allowed claims in the Bankruptcy case (totaling more than $1 billion), and subordinate JD Holdings' own allowed claim of more than $495 million.  (*Id.*; Doc. 14 at ¶ 14).

One of the assets owned by the Trust to be transferred to JD Holdings under the settlement is the Trust's 50% membership interest in WHR.  (Doc. 14 at ¶ 15).

On March 30, 2018, JD Holdings filed its Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for all Debtors filed by Creditor JD Holdings, L.L.C. (the "Plan").  (Doc. 14-7).  The Plan contains an exculpation clause ("Exculpation Clause") that states, in relevant part:

> Except as otherwise specifically provided in the Plans, no Exculpated Party shall be responsible or have any liability for, and each Exculpated Party is hereby released and exculpated from, any claim, Cause of Action, duty, obligation, liability, damage, loss, cost or expense for (i) any act taken or not taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Disclosure Statement, Plans, Confirmation, Plans Transactions, the Plans, or any Plan Documents or other agreement, document, instrument, or release created or entered into in connection with the Plains; (ii) any act taken or not taken in connection with, or related to, the negotiation of Cure Costs; (ii) any act taken or not taken in connection with, or related to, the amendment, assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases; or (iv) any other prepetition or post-petition act taken or not taken in connection with, or related to, the restructuring of the Debtor, except for (A) willful misconduct (including fraud), (B) the rights of any Entity to

enforce the Plans and the Plans Documents, or (C) the rights
of any Entity to enforce any Final Order, but in all respects
such Exculpated Parties shall be entitled to reasonably rely
upon the advice of counsel with respect to their duties,
responsibilities and obligations under the Plans or any Final
Order.

(Doc. 14-7 at 31).[1]

On May 11, 2018, the Bankruptcy Court entered a Corrected Order Confirming

Modified Amended Joint and Consolidated Chapter 11 Plans of Reorganization for all

Debtors Filed by Creditor JD Holdings, L.L.C. (the "Confirmation Order"). (Doc. 14 at

¶ 21). The Confirmation Order provides for, *inter alia*, a delay in the transfer of certain

assets, including, but not limited to, the Trust's interest in WHR. (*Id.* at ¶ 22). <u>The

Confirmation Order requires the Trust to notify JWJ of the mechanism or procedure by

which it intends to transfer the Trust's interests in WHR to JD Holdings, and to allow

JWJ to object.</u> (*Id.* at ¶ 23).

The Confirmation Order also includes language enjoining certain actions

("Injunction"):

Except as otherwise expressly provided in the Plans or this
Order, all Entities or Persons who have held, hold, or may
hold Claims or Equity Interests that have been released
pursuant to the Plans or this Order, discharged pursuant to the
Plans and this Order, or are subject to exculpation pursuant to
the Plans or this Order are permanently enjoined, from and
after the Effective Date, from taking any of the following
actions against the Debtors, JD Holdings, or the Sale Lender,
in its capacity as such: (i) commencing or continuing in any

---

[1] The Plan defines "Exculpated Parties" as the Debtors Released Parties, the JD Holdings
Released Parties, and the Trustees Released Parties. (Doc. 14-7 at 10). The term "Trustees
Released Party" is defined as, *inter alia*, Trust Defendants Mr. Groves and Ms. Dowdy,
individually and in their respective capacities as co-successor trustees of the Trust. (*Id.* at 14).

manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Equity Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment ,award, decree or order against such Entities or Persons on account of, in connection with, or with respect to any such Claims or Equity Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or Persons on account of, in connection with, or with respect to an such Claims or Equity Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or Persons or against the property or estates of such Entities or Persons on account of, in connection with, or with respect to any such Claims or Equity Interests unless such Entity or Person has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or proof of Equity Interest or otherwise that such Entity or Person asserts has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Equity Interests released or settled pursuant to the Plans.

(Doc. 14-9 at 37-38).

    **C.**    **This Lawsuit.**

JWJ filed this lawsuit challenging the Trust Defendants' failure to authorize two WHR transactions, as well as Ms. Dowdy's appointment of an alleged competitor to manage the Trust's membership interest in WHR.

First, the Complaint alleges that WHR owns a Marriott Hotel in Chicago, Illinois ("Chicago Marriott"); JWJ and the Trust agreed to sell the Chicago Marriott, in part, to avoid paying for a $5 million property improvement plan required by the Marriott franchise; a company ("Navika") has offered to purchase the Chicago Marriott; and JWJ

has agreed to sell the Chicago Marriott to Navika. (Doc. 5 at ¶¶ 17-30). The Complaint alleges that JWJ has made numerous requests to Ms. Dowdy for her authorization to allow WHR to sell the Chicago Marriott to Navika, but neither Ms. Dowdy nor Mr. Groves have agreed to authorize the sale. (*Id.* at ¶¶ 31-34). JWJ argues that, absent authorization from Ms. Dowdy and/or Mr. Groves, WHR will lose a potential sale of the Chicago Marriott, which will, *inter alia*, require WHR to pay for the $5 million property improvement plan.

Second, the Complaint alleges that WHR owns an Embassy Suite Hotel in Lexington, Kentucky ("Lexington Embassy Suite"); WHR's lease with the University of Kentucky requires WHR to build a new Hampton Inn on a parcel adjacent to the Lexington Embassy Suite; and WHR was required to make reasonable efforts to begin construction of the proposed Hampton Inn by May 31, 2018 ("Lexington Development"). (Doc. 5 at ¶¶ 39-44). JWJ has requested confirmation from Ms. Dowdy that the Lexington Development can proceed, but neither Ms. Dowdy nor Mr. Groves has provided the required authorization. (*Id.* at ¶¶ 45-50). JWJ argues that WHR's refusal to authorize the Lexington Development will cause WHR to breach its lease with the University of Kentucky and render it liable for significant monetary damages.

Third, the Complaint alleges that Ms. Dowdy resigned as co-manager representing the Trust's ownership in WHR on June 8, 2018, and appointed Daniel Abrams as her replacement. (Doc. 5 at ¶¶ 51-52). The Complaint alleges that Mr. Abrams is a senior executive officer at Atrium Holdings, LLC, an affiliate of JD Holdings and a competitor of WHR. (*Id.* at ¶¶ 53-55). The Complaint alleges that Ms. Dowdy's attempt to appoint

6

Mr. Abrams as co-manager of the Trust's interest in WHR will cause irreparable harm to JWJ and WHR. (*Id.* at ¶ 60).

The Complaint asserts two claims. Count One alleges that the actions and inactions of Ms. Dowdy and Mr. Groves explained *supra* constitute breaches of fiduciary duties owed to JWJ. (Doc. 5 at ¶¶ 61-65). Count Two seeks the appointment of a receiver to execute the sale of the Chicago Marriott and to commence the Lexington Development. (*Id.* at ¶¶ 66-68).

### D. Pending Motions.

There are two motions pending before the Court. First, JWJ filed a motion for preliminary injunction and appointment of a receiver (Doc. 11), which asks the Court to appoint a receiver for WHR to sell the Chicago Marriott and commence the Lexington Development, and to issue an Order enjoining Mr. Abrams from serving as co-manager of WHR. The Trust Defendants oppose the motion for preliminary injunction. (Doc. 14). Second, the Trust Defendants argue that this Court should transfer this case to the District of Kansas for consideration by the Bankruptcy Court. (Doc. 2).

## II. ANALYSIS

### A. Trust Defendants' Motion to Transfer.

1. <u>Standard</u>.

The parties disagree as to which statute governs the Trust Defendants' motion to transfer. The Trust Defendants argue their motion should be analyzed under 28 U.S.C. § 1412, which allows a district court to transfer <u>a case or proceeding under Title 11</u> to a district court for another district in the interest of justice or for the convenience of the

parties.  On the other hand, JWJ argues that the transfer motion should be analyzed under 28 U.S.C. § 1404(a), which provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court <u>may transfer any civil action</u> to any other district or division where it might have been brought."  Accordingly, the Court must determine whether this action is a "case" or "proceeding" under Title 11 and therefore governed by § 1412, or whether it is merely a civil action governed by § 1404(a).[2]

    Bankruptcy "cases" are distinct from bankruptcy "proceedings:" a "case" is commenced by filing a petition with the bankruptcy court and includes the actual administration of the bankruptcy from the time of its filing until the case is finally closed. *See Independent Stationers Inc. v. Vaughn*, Case No. IP99-0127, 2000 U.S. Dist. LEXIS 14207, at * 9 (S.D. Ind. Jan. 3, 2000).  In contrast, a "proceeding" is a litigated matter connected to the bankruptcy case. *Id.*

Bankruptcy "proceedings" are divided into three categories: (1) civil proceedings <u>arising under</u> Title 11, (2) civil proceedings <u>arising in</u> a case under Title 11, and (3) civil proceedings <u>related to</u> a case under Title 11. *Id.*  Proceedings that can be said to "arise under" Title 11 or "arise in" a case under Title 11 "arise during the bankruptcy

---

[2] Although § 1404(a) and § 1412 are similar, there are three important differences between the two statutes.  First, under § 1412, the "interest of justice" and "convenience of the parties" standards are <u>disjunctive and separate</u>, and transfer is appropriate even if only one is met. *See MD Acquisition, LLC v. Myers*, No. 2:08-cv-494, 2009 U.S. Dist. LEXIS 13549, at * 17 (S.D. Ohio Feb. 23, 2009).  Second, when evaluating the "interest of justice" prong under § 1412, the interest of the bankruptcy estate, as opposed to the other litigants' interests, is paramount. *See RFF Family P'Ship v. Wasserman*, No. 1:07-cv-1617, 2010 U.S. Dist. LEXIS 57191, at * 14 (N.D. Ohio Jan. 29, 2010).  Third, there is a strong presumption that the proper venue for a case related to a bankruptcy proceeding is in the district in which the bankruptcy proceeding is pending. *Id.* (citations omitted).

proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor." *Id.* (citation omitted). A proceeding is "related to" a bankruptcy case if it could "conceivably have any effect on" the debtor's estate. *See RFF Family P'Ship*, 2010 U.S. Dist. LEXIS 57191 at ** 19-20.

Here, JWJ asks this Court to appoint a receiver for WHR for the purpose of authorizing two projects and further to enjoin Ms. Dowdy's appointment of Mr. Abrams as co-manager of WHR. The relief requested by JWJ seeks to interfere with the Trust's co-management rights in WHR. The Trust's co-management rights are property of the bankruptcy estate ("Bankruptcy Estate"); the Confirmation Order expressly contemplates those rights will be transferred to JD Holdings. (Doc. 14-10 at 4). This proceeding could "conceivably" effect the Bankruptcy Estate and is therefore "related to" the Bankruptcy Case. *See RFF Family P'Ship*, 2010 U.S. Dist. LEXIS 57191 at ** 19-20. Accordingly, the Court will analyze the Trust Defendants' motion to transfer this "related to" proceeding under § 1412.[3]

In analyzing whether a transfer would be in the "interest of justice" pursuant to § 1412, courts typically weigh the following factors: (1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) whether the parties would be able to receive a fair trial in each of the possible venues; (4) whether either

---

[3] This Court acknowledges that there is a split of authority as to whether § 1412 or § 1404 governs a motion to transfer a civil case that is "related to" a bankruptcy case in another district. The Court agrees with the Northern District of Ohio's holding in *RFF Family Partnership* that § 1412 applies to such cases. 2010 U.S. Dist. LEXIS 57191 at ** 17-18.

forum has an interest in having the controversy decided within its borders; (5) whether the enforceability of any judgment would be affected by the transfer; and (6) whether the plaintiff's original choice of forum should be disturbed. *See Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 874 (Bankr. S.D. Ohio 2011). <u>Courts give the greatest weight to whether the proposed transfer would promote the economic and efficient administration of the bankruptcy estate</u>. *See Meritage Homes Corp. v. JP Morgan Chase Bank, N.A.*, 474 B.R. 526, 569 (S.D. Ohio 2012).[4]

      2.    <u>Analysis</u>.

The Court has carefully considered the relevant factors and finds that a transfer to the District of Kansas would be in the interest of justice for three primary reasons.

First, JWJ asks the Court to appoint a receiver to authorize two WHR projects and to enjoin the appointment of Mr. Abrams as co-manager of WHR. If granted, this relief would substantially interfere with the Trust's co-management rights in WHR. Those rights are property of the Bankruptcy Estate and are in the process of being transferred to

---

[4] Section 1412 allows the Court to transfer a case if it is in the interest of justice **or** for the convenience of the parties. Here, the Court will only consider whether a transfer would be in the interest of justice. The Operating Agreement contains a forum selection clause that states "[a]ny suit involving a matter arising out of this Agreement may be brought only in the United States District Court for the Southern District of Ohio or, if applicable, the Hamilton County Court of Common Pleas." (Doc. 10-1 at 2). By entering into the Operating Agreement and agreeing to the forum selection clause, the Trust (and the Trust Defendants) have waived the right to argue that Ohio is an inconvenient forum. However, the forum selection clause does not preclude a finding that this case should be transferred in the interest of justice. *See Independent Stationers, Inc.*, 2000 U.S. Dist. LEXIS 14207, at * 24 (explaining that a forum selection clause does not waive "the interests of justice" prong of a transfer analysis, and holding that, under § 1412, "when a forum selection clause exists the party seeking to transfer venue may not use its own convenience as the reason to transfer venue, rather, the party must satisfy the interests of justice prong to prevail").

JD Holdings. (Doc. 14-10 at 4). The Court finds it would promote the economic and efficient administration of the Bankruptcy Estate for the Bankruptcy Court to hear JWJ's claims and decide if JWJ's requested relief is appropriate.

Second, the Trust Defendants argue that JWJ's claims are barred by the Exculpation Clause and the Injunction. Again, the Court finds it would promote the economic and efficient administration of the Bankruptcy Estate for the Bankruptcy Court to interpret the Plan and the Confirmation Order to determine if one or both of the orders bars JWJ's claims.

Finally, the Bankruptcy Case has been pending for more than two years. The Bankruptcy Court is familiar with key operative and historical facts that place it in a position to resolve the instant claims more efficiently than this Court. Accordingly, the Court finds that the interest of judicial economy would be served best by a transfer.

The Court acknowledges that some factors weigh in favor of keeping this case here. The State of Ohio arguably has an interest in hearing these state-law claims asserted by an Ohio corporation (JWJ) pertaining to the operation of an Ohio limited liability company (WHR), and the Court is cognizant that Ohio is JWJ's chosen forum. However, there is a "strong presumption" that transfer to the District of Kansas is appropriate for this "related" proceeding, and the Court finds that the interests of judicial economy and the administration of the Bankruptcy Case so clearly favor a transfer as to outweigh the other factors. Accordingly, the Court **GRANTS** the Trust Defendants'

motion to transfer venue (Doc. 2).[5]

**B.    JWJ's Motion for Preliminary Injunction and Appointment of a Receiver.**

Also pending before the Court is JWJ's motion for a preliminary injunction and appointment of a receiver.  (Doc. 11).  Although the Court finds a transfer to be in the interest of justice, the Court does not wish for any delay associated with the transfer to interfere with JWJ's right to have a court consider its claims for immediate relief in a timely fashion.  Accordingly, the Court has reviewed JWJ's motion for a preliminary injunction and appointment of a receiver and denies such motion—without prejudice—for the reasons that follow.

1.    Standard.

Federal Rule of Civil Procedure 65 permits a party to seek injunctive relief when the party believes that it will suffer immediate and irreparable injury, loss, or damage.  Nevertheless, an "injunction is an extraordinary remedy which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (emphasis supplied).

---

[5] The Trust Defendants request that this case be transferred to the Bankruptcy Court.  This District Court is aware of the District of Kansas's Standing Order No. 13-1, which provides that "any or all proceedings . . . related to a case under title 11 are referred to the bankruptcy judges for this district."  However, on its face, § 1412 only allows this Court to transfer this case to another district court.  Accordingly, the Court will transfer this case to the District of Kansas for reassignment by the Clerk at that location to the Bankruptcy Court pursuant Standing Order No. 13-1.

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Ne. Ohio Coal. For Homeless & Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1099 (6th Cir. 2006). These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc*., 119 F.3d 453, 459 (6th Cir. 1997).[6]

      2.    <u>Analysis</u>.

Here, the Court has considered the relevant factors and concludes that the "extraordinary" remedies of a preliminary injunction and/or a receiver are not appropriate.

---

[6] JWJ's motion also seeks the appointment of a receiver pursuant to Federal Rule of Civil Procedure 66. Like a preliminary injunction, <u>the appointment of a receiver is in the Court's discretion and is "an extraordinary remedy that is only justified in extreme situations."</u> *De Boer Structures (U.S.A.), Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001) (emphasis added). There is no precise formula for determining when appointment is warranted; however, courts generally consider the validity of the claim by the party seeking appointment; the probability that fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be concealed, lost or its value diminished; inadequacy of legal remedies; lack of less drastic equitable remedy; and the likelihood that appointment will do more harm than good. *Id.* The party seeking a receiver must demonstrate the need for a receiver by <u>clear and convincing evidence</u>. *Malloy v. Malloy Color Lab, Inc.*, 63 Ohio App. 3d 434, 437 (1989).

Because the factors to be considered for appointment of a receiver mostly mirror those for a preliminary injunction (namely, the likelihood of success on a claim for which traditional damages would be an inadequate remedy), the Court evaluates JWJ's motion under the traditional preliminary injunction factors.

First, the Court finds that JWJ has not shown a likelihood of success on the merits. JWJ's Complaint alleges that the Trust Defendants breached fiduciary duties by refusing to authorize the sale of the Chicago Marriott, refusing to authorize the Lexington Development, and by appointing Mr. Abrams as the co-manager representing the Trust's interests in WHR. However, JWJ and the Trust are <u>co-managers</u> of WHR, and JWJ has not set forth any legal authority or persuasive argument indicating that the Trust Defendants' failure to exercise their management rights in the way JWJ would have liked constitutes a breach of a fiduciary duty. The limited record before the Court at this juncture indicates that this is simply a business dispute between equal co-managers.

b. *Irreparable Injury.*

To demonstrate irreparable injury, a plaintiff must show that it will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated. *See Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Moreover, harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet*, 305 F.3d at 578.

Here, JWJ's Complaint seeks damages in excess of $500,000 as compensation for the Trust Defendants' alleged breach of fiduciary duty. (Doc. 5 at 13). Typically, an injury is not "irreparable" unless "it cannot be undone through monetary remedies." *See Hendricks v. Comerica Bank*, 122 Fed. Appx. 820, 824 (6th Cir. 2004). JWJ argues that an injunction and a receiver are required in this case because "the Trust does not have the financial ability to pay a damage claim obtained by JWJ." (Doc. 17 at 15). This argument is not well-taken; the mere fact that the defendant is insolvent does not

14

establish that an injury is irreparable. *Hendricks*, 122 Fed. Appx. at 825. The Court is not convinced that JWJ's alleged injury cannot be cured by the damages JWJ expressly requested in the Complaint.

c.     *Harm to Others/Public Interest*.

The final factors in the injunctive relief analysis are whether granting the injunction would cause harm to others and/or serve the public interest. "The irreparable injury [the plaintiffs] will suffer if their motion for injunctive relief is denied must be balanced against any harm which will be suffered by [others] as a result of the granting of the injunctive relief." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

The Court finds this factor weighs against granting preliminary injunctive relief for two reasons. First, the Court finds that the Trust Defendants will be harmed if an injunction were to issue because they would be denied the ability to exercise their co-management rights in WHR. Second, for the reasons explained in Section (II)(A)(2), *supra*, the Court finds that the public interest would be served by this Court refraining from interfering with the Trust's WHR co-management rights, which are currently property of the Bankruptcy Estate.

Accordingly, JWJ's motion for preliminary injunction and for appointment of a receiver (Doc. 11) is **DENIED** without prejudice.

## III.   CONCLUSION

For the foregoing reasons, the Trust Defendants' motion to transfer venue (Doc. 2) is **GRANTED**.  This case is hereby **TRANSFERRED** to the United States District Court for the District of Kansas, for reassignment pursuant to that Court's Standing Order No. 13-1 to the United States Bankruptcy Court for the District of Kansas, and the Clerk shall act accordingly.

Plaintiff's motion for preliminary injunction and for a receiver (Doc. 11) is **DENIED** without prejudice to refiling in the transferee court.

Accordingly, this case is terminated upon the docket of this Court.

**IT IS SO ORDERED.**

Date: _____8/9/18_____                          _Timothy S. Black_
                                              Timothy S. Black
                                              United States District Judge